Joshua Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino Del Rio S, Suite 308
San Diego, CA 92108
*P: (866) 219-3343*

Daniel Shay (SBN 250548)
Dan@ShayLegal.com
Harrison Lynch (SBN 355139)
Harrison@ShayLegal.com
**SHAY LEGAL, APC**
2221 Camino del Rio S, Suite 308
San Diego, CA 92108
*P: 619-222-7429*

*Attorneys for Plaintiff*
*and the putative class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASHUA SWEENEY, individually and for all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>GRIFFIS GROUP OF COMPANIES, LLC dba GRIFFIS RESIDENTIAL,<br><br>Defendant. | Case No: 3:26-cv-01742-WQH-JLB<br><br><u>CLASS ACTION</u><br><br>**FIRST AMENDED COMPLAINT**<br><br>1. Unlawful Retention of Residential Security Deposits, Cal. Civ. Code § 1950.5;<br>2. Breach of Written Contract;<br>3. Breach of the Implied Covenant of Good Faith and Fair Dealing;<br>4. Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq;<br>5. Unfair and Deceptive Business Practices, Cal. Bus. & Prof. Code § 17200 et seq;<br>6. Rosenthal Fair Debt Collection Practices Act, Cal. Civ Code § 1788 et seq;<br>7. Statutory Larceny, Cal. Pen. Code §§ 484 & 496;<br>8. Unlawful Utility Fees, San Diego Municipal Code § 98.1201 et seq.<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff JASHUA SWEENEY ("Plaintiff") brings this class action on behalf of himself, and the Classes, as defined below, against Defendant GRIFFIS GROUP OF COMPANIES, LLC, a Colorado limited liability company, dba Griffis Residential ("Defendant") for violating numerous consumer protection laws. Plaintiff makes these allegations based on personal knowledge and investigation conducted by his attorneys.

**INTRODUCTION**

1. Plaintiff brings this Class Action because of Defendant's intentional failure to follow landlord tenant laws, and Defendant's repeated scheme of larceny and defrauding tenants by demanding payment for bogus fees, charges, and expenses.

2. Defendant manages many apartment complexes throughout California. Defendant is no stranger to Class Action lawsuits regarding breaches of laws that protect tenants.

3. As recently as August 2024, Defendant settled a class action lawsuit for unlawful fees, specifically late fees, notice fees, surcharge fees, and valet trash fees. *Koch v. Griffis Group of Companies, LLC d/b/a Griffis Residential*; Case No. 2021CV30718 (District Court, Adams County, Colorado) ("Previous Class Action").

4. Defendant litigated that case for nearly three years, and despite agreeing to pay approximately $599,745 to settle the claims of many impacted tenants, Defendant has continued with the same conduct that landed them in court initially. Such previous penalty was clearly not enough to deter future illegal conduct, for the same actions.

5. Disturbingly, the prior conduct alleged in the Previous Class Action was systemic charging of tenant for illegal fees. Such treatment outlines Defendant's view of tenants as targets for exploitation, whereby Defendant can pass off costs associated maintaining a unit or otherwise increase the profitability of a unit without raising rent. By passing these costs on to the tenant, Defendant can raise the profitability of each unit by minimizing the costs of maintenance and repairs. Such practice is employed

across the units Defendant manages.

6. What is more disturbing is that this conduct was intentionally continued, as part of an organized scheme or enterprise, to place profits over people—by whatever means available—through abusing the disparate power in negotiation Defendant has as part of a large, organized conglomerate with significantly more resources than its prospective, current, and former tenants.

7. Defendant has continued such practices alleged in the Previous Class Action, without a legal basis to charge such fees.

8. Defendant advertises the prices of its available units and additionally represents certain payment schedules. Such payment schedules do not include all mandatory fees. Further, the leases that Defendant required Plaintiff and Class Members to sign did not describe a uniform fee schedule. Fees are added to base rent and spread out through several addendums to the lease.

9. By hiding the fees Defendant passes on to its tenants, Defendant advertises prices that are deceivingly low to entice unsuspecting tenants into moving into an available unit. This is a deceptive marketing tactic to advertise lower rent to attract tenants without disclosing all the additional charges they will be assessed.

10. Additionally, Defendant intentionally waits until a new tenant moves into the unit, then springs additional fees on the tenant. Not only is this practice deceptive, but it is extortive because the tenant's only option is to pay the fees or leave their home.

11. The reoccurring fees that a tenant is expected to pay are characterized as: Administrative Fee, Package Fee, Green Living, Pest Control, Valet Trash (after paying a separate "Trash fee"), and Water Heating. These fees shall be collectively referred to as the contested fees ("Contested Fees")."[1] The subset of Contested Fees consisting of Pest Control, Valet Trash, and Water Heating shall be referred to as the habitability

[1] All Contested Fees were not advertised, then added during lease signing. These fees are reoccurring monthly obligations shifted onto the tenant.

fees ("Habitability Fees").[2]

12. If a tenant changes units within the building, they are charged a holding fee and a one-time Transfer Fee of $500. Collectively, these fees shall be referred to as the transfer fees ("Transfer Fees").

13. A second set of reoccurring unlawful fees, under local San Diego law,[3] consists of utilities provided by the City of San Diego (the "City"), such as water, sewer, stormwater, or solid waste management (trash) services. These fees shall be collectively referred to as the San Diego fees ("San Diego Fees").

14. With respect to the Contested Fees, these fees can exceed one hundred dollars ($100) each month. While many of the fees are vague, the Habitability Fees unlawfully delegate a landlord's responsibilities to the tenant.

15. Under Civil Code § 1941.1, a landlord is *required to provide* a dwelling that substantially complies with habitability standards, including: effective waterproofing and weather protection of roof and exterior walls; plumbing facilities in good working order *with hot and cold running water* connected to a sewage system; properly installed and maintained gas facilities; heating facilities in good working order; electrical lighting with wiring and outlets in good working order; *clean and sanitary buildings, grounds, and common areas free from debris, filth, and vermin*; *adequate garbage and waste receptacles*; floors, stairways, and railings maintained in good repair; and a building maintained in compliance with applicable building and housing codes materially affecting health and safety. *See* Cal. Civil Code § 1941.1 (emphasis added).

16. When offering a unit for rent, maintaining habitability standards has long been a landlord's responsibility and is done at the landlord's expense. The monthly rent for a residential unit is set by market conditions and necessarily accounts for the landlord's legal obligations, including the duty to maintain the property in a habitable

[2] The Habitability Fees were deceptively spung on Plaintiff and Class Members, just like the other Contested Fees, but the Habitability Fees also have a separate basis for being unlawful: these fees unlawfully shift the landlord's legal obligations to provide a habitable unit onto the tenant, in violation of the Implied Warranty of Habitability.

[3] San Diego Municipal Code § 98.1201 *et seq* (added 7-18-2025 by O-21987 N.S.; effective 8-18-2025).

condition. Compliance with these obligations is a basic cost of operating rental property. Any attempt to pass those costs to the tenant improperly shifts the landlord's statutory duties onto the tenant and allows the landlord to retain the benefit of rent priced to include those obligations while avoiding the expense of actually performing them.

17. Charging California rent requires a landlord to deliver a California-standard home. However, by directly passing on such maintenance costs, landlords like Defendant seek to charge California rent without maintaining California standards.

18. In California, a landlord is responsible for providing dwellings with hot water, adequate garbage receptacles, and free of pests. Charging a tenant a fee to heat water, a fee to manage trash (especially when already passing on another fee for trash management) and a fee to manage pests, improperly shifts the landlord's legal obligations to the tenant.

19. By deceptively labeling the landlord's statutory habitability obligations as tenant-payable fees, the landlord engages in a scheme to defraud tenants by inducing them to pay charges that the law requires the landlord to bear as part of the ordinary cost of operating a rental property.

20. Defendant's conduct was not done in isolation, Defendant made a calculated business decision to continue to defraud its tenants, with the intention to organize efforts in a pattern of systemic larceny.

21. While the recently settled Previous Class Action focused on certain fees, Defendant's disregard of landlord tenant laws goes further.

22. Defendant has been collecting and unlawfully retaining residential security deposits in violation of California Law. Such practice begins at the initiation of the application process, where Defendant charges a "holding fee" to remove a residential unit from the open market, and later charges a separate "security deposit." Under Cal. Civ. Code § 1950.5, such holding fee is also part of the security deposit. However, upon move out, Defendant does not include the holding fee in the security

deposit accounting, as it should. This means that Defendant unlawfully retains a portion of the security deposit by failing to account for all security that was paid at the initiation of the tenancy.

23. Defendant further unlawfully retains residential security deposits by failing to conduct an initial inspection at move out and failing to provide all required documentation with the security deposit accounting.

24. A security deposit may only be used for certain tenant obligations. A landlord is required to provide an itemized statement, which details each legally permissible charge, along with any return of a security deposit, within twenty-one (21) days of the date the unit is returned to the landlord. When the deductions exceed one hundred and twenty-five dollars ($125), the landlord is required to provide supporting documentation, such as receipts from the service provider and pictures, along with the itemized statement. A landlord is only allowed to make certain deductions from the security deposit and is not allowed to deduct damage caused by ordinary wear and tear from the security deposit.

25. Defendant knowingly failed to comply with the security deposit laws. First, as an institutional landlord, Defendant knows or should know its legal obligations with respect to security deposit accounting. Second, Defendant routinely deducted impermissible fees from security deposits without a lawful basis to do so. Third, Defendant made deductions that exceeded $125 (and, usually, the entire security deposit) and passed those charges on to Plaintiff and Class Members. Fourth, Defendant did not provide the required documentation with itemized statements. Finally, many of the deductions were for repairing ordinary wear and tear.

26. Not only were these actions taken in bad faith, but they were made with the intention to defraud unsuspecting tenants, like Plaintiff, and increase overall profitability of each rental unit.

27. As a result of Defendant's conduct, Plaintiff and Class Members have been harmed and damaged in several ways.

28. Defendant should not be allowed to steal, defraud, and threaten unsuspecting and vulnerable tenants with illegal bullying tactics Defendant knows it should not be using.

29. Plaintiff, on behalf of himself and all others similarly situated, alleges claims for (1) unlawful retention of residential security deposit (Cal. Civ. Code § 1950.5); (2) breach of written contract; (3) breach of the implied covenant of good faith and fair dealing; (4) violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 et seq.); (5) violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.); (6) violation of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 et seq.); (7) statutory larceny (Cal. Pen. Code §§ 484 & 496); and (8) unlawful utility fees, San Diego Mun. Code § 98.1201 et seq. Plaintiff and the Class Members seek damages from Defendant, and to compel Defendant to adopt adequate legal practices regarding the handling of security deposits, demanding payment for unsubstantiated costs, and collecting illegal fees.

## JURISDICTION AND VENUE

30. Jurisdiction is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff, a resident of the State of California, seeks relief on behalf of a California class, which will result in at least one class member belonging to a different state than Defendant.

31. Defendant is a Colorado limited liability company, thus satisfying minimal jurisdiction. There will be more than one hundred (100) members in the class, and the aggregated damages exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA.

32. Plaintiff is a citizen of California because his domicile is in San Diego, California.

33. This Court has personal jurisdiction over Defendant because it has conducted and continues to conduct substantial business in California, employs numerous individuals in California, and has intentionally availed itself of the laws and

markets of California through the operation of its business in California.

34. Venue is proper in this Court because the illegal acts alleged herein occurred in San Diego, California. Defendant manages apartments in San Diego, where Plaintiff's tenancy occurred and Plaintiff's causes of action arose.

## PARTIES

### A. Plaintiff

35. Plaintiff is an individual over the age of eighteen years, and at all times relevant herein was and is, a resident of the County of San Diego in the State of California.

36. Plaintiff was a tenant at an apartment complex in San Diego commonly referred to as Griffis East Village, located at 688 13th St, San Diego, California 92101 (the "Apartments").

37. Plaintiff and every putative class member resided in California at the time their cause of action accrued, all injuries complained of herein occurred within California.

### B. Defendant

38. Defendant is a multifamily real estate investment and property management company that owns and operates apartment communities in several major metropolitan markets. The company focuses primarily on higher-end multifamily properties and manages the properties in its portfolio. Defendant is headquartered in Greenwood Village, Colorado. According to Defendant's website, Defendant operates at least five (5) apartment communities across the state of California, which likely total to an estimated 1,200 individual units in California.[4]

39. Defendant is a "landlord" under applicable landlord tenant law in California.

40. Defendant, as a landlord, has a non-delegable duty to provide a habitable

[4] Defendant's website does not include a total unit count, but independent investigation of websites, such as the Yardi Matrix and Redfin, place the total number of units to 1,172 to 1,210 units.

premises to all its tenants.

41. Defendant was Plaintiff's and Class Members' landlord at all times relevant.

42. Unfortunately for tenants of Defendant's portfolio, Defendant uniformly, systematically, and in bad faith retains residential security deposits, or portions thereof, in violation of California law and additionally charges its tenants unlawful, hidden, and excessive fees.

43. Defendant has a centralized security deposit administration, rent and fee policy for all the California properties under its portfolio. It develops, promulgates, and administers security deposit and fee policies and practices uniformly across its California controlled and/or managed properties.

## FACTUAL ALLEGATIONS

### A. Background

44. On or around June 7, 2019, Plaintiff began residing at The Apartments after signing a written lease agreement ("First Lease"). Plaintiff paid a security deposit of $500.

45. Sometime later, Defendant purchased or acquired The Apartments and became the property manager. The security deposit Plaintiff paid was somehow reduced from $500 to $400 by Defendant.

46. Defendant assumed the role of the landlord for all leases for the residents of The Apartments. The leases existed prior to Defendant acquiring ownership and/or management of The Apartments and were assigned to Defendant in the transaction.

47. The First Lease contained many additional, not previously disclosed or advertised fees, such as: Administrative Fee, Green Living, Pest Control, Valet Trash (after paying a separate Trash fee), and Water Heating. None of such fees were included in the monthly rent and there was no total for monthly fees in the lease. The total price for rent and all such fees was never listed, explained, articulated or displayed prior to signing the lease.

48. Plaintiff paid such fees as they became "due," thinking that he was complying with his contractual obligations.

49. Had Plaintiff known the fees he was being charged were unlawful, he would not have paid them.

50. On or around March 28, 2025, Plaintiff notified Defendant that he wanted to move into an available unit within The Apartments. Plaintiff paid a One Hundred Dollar ($100) "holding fee" and was also required to pay a Five Hundred Dollar ($500) "transfer fee," in addition to a "termination fee" which equaled around one month's rent.

51. The First Lease specified an amount less than one month of rent as the "termination fee," but Defendant nonetheless charged Plaintiff more than the amount listed in the contract. The "holding fee" and the "transfer fee" were not described in the First Lease.

52. On or around April 27, 2025, Plaintiff moved out of the premises, thinking that all parties were happy and expecting at least a partial refund of his security deposit.

53. On or around May 6, 2025, Defendant posted a bill on Plaintiff's online tenant payment portal and subsequently sent it by email. The bill was titled "Final Account Statement" and was for $541.28. This was calculated as $645.85 "At Move Out" fees plus $295.43 "After Move Out" fees equaling $941.28 minus the $400 security deposit (should have been $500) equaling $541.28.

54. At Move Out, Plaintiff "owed" $645.85, calculated as follows:

| | |
|---|---|
| Administration Fee 03/01/25 - 03/31-25 | $4.65 |
| Green Living 03/01/25 - 03/31/25 | $5.00 |
| Pest Control 03/01/25 - 03/31/25 | $2.00 |
| Sewer 03/01/25 - 03/31/25 | $15.85 |
| Stormwater 03/01/25 - 03/31/25 | $0.29 |
| Transfer Fees | $500.00 |
| Trash 03/01/25 - 03/31/25 | $43.48 |
| Valet Trash 03/01/25 - 03/31/25 | $25.00 |
| Water 03/01/25 - 03/31/25 | $21.28 |
| Water Heating 03/01/25 - 03/31/25 | $28.30 |
| Balance at Move Out | **$645.85** |

55. After Move Out, Plaintiff "owed" $295.43, calculated as follows:

| | |
|---|---|
| Final Trash Charge: 04/01/25 - 04/27/25 | $31.69 |
| Final Pest Control Charge: 04/01/25 - 04/27/25 | $1.80 |
| Final Water Heating Charge 04/01/25 - 04/27/25 | $22.55 |
| Final Sewer Charge 04/01/25 - 04/27/25 | $0.14 |
| Final Sewer Base Charge 04/01/25 - 04/27/25 | $13.67 |
| Final Water Base Charge 04/01/25 - 04/27/25 | $5.02 |
| Final Cold Water Charge 04/01/25 - 04/27/25 | $8.97 |
| Final Hot Water Charge 04/01/25 - 04/27/25 | $4.70 |
| Final Administrative Fee 04/01/25 - 04/27/25 | $4.65 |
| Final Stormwater Charge 04/01/25 - 04/27/25 | $0.24 |
| Express Move-Out Clean: 1 Bed 1 Bath | $175.00 |
| Final Green Living Charge 04/01/25 - 04/27/25 | $4.50 |
| Final Valet Trash Charge 04/01/25 - 04/27/25 | $22.50 |
| Total additional Charges/Credits/Payments | **$295.43** |

56. The only supporting documents attached to the Final Account Statement was an invoice listing the above After Move Out charges, except the cleaning fee. No receipt was provided from the cleaner for the cleaning fee. Photographs were provided only after Plaintiff made a request for such photos a year later.

57. Plaintiff paid the demanded sum, which Defendant claimed to be due and owing, by electronic payment because he feared suffering an adverse impact to his credit or creditworthiness.

**B. Previous Class Action**

58. While Defendant settled the Previous Class Action and admitted no liability, the facts of that lawsuit can be used to show Defendant's knowledge, intentions, and common, continuing practices, policies, or procedures.

59. While any property manager should be readily familiar with which fees and in what instances the fees be lawfully passed on to tenants, the Previous Class Action shows that Defendant ignores lawful requirements for fee allocation.

60. The Previous Class Action showed that the fees were inappropriate.

61. Defendant has decided to pursue the misconduct of charging tenants

exorbitant, excessive, unlawful, unsubstantiated, and unsupported costs and fees, regardless of the consequences. Such a policy, practice, or procedure gives rise to bad faith dealings and operations that target unsuspecting tenants, leveraging such tenants diminished bargaining power.

62. Defendant's misconduct as alleged above is unreasonable, outrageous, obscene, and intolerable by a just society. Defendant's misconduct is oppressive to current and former tenants because it subjects such tenants to cruel and unjust hardship in conscious disregard of their rights as a tenant.

**C. San Diego Ordinance**

63. Under local San Diego law, codified at San Diego Municipal Code § 98.1201 *et seq* (added 7-18-2025 by O-21987 N.S.; effective 8-18-2025), a landlord may only charge a tenant a maximum of the amount that the landlord pays for the individual tenant's utility services.[5] In order to make such charges, the landlord is required to provide with a written notice on how the landlord charges the tenant for City provided utility services (i.e., water, sewer, stormwater, and solid waste management services). Such notice may be provided in the lease or by personal delivery or by serving a copy by mail in accordance with § 1162(a) of the Cal. Code of Civ. P.[6] The landlord is required to give such notice thirty (30) days before charging the tenant for the utility fee.[7] If the landlord was charging tenants for utility fees before August 17, 2025, then the landlord was required to provide specific notice as defined by the code on or before November 15, 2025.[8]

64. Defendant ignored the San Diego ordinance. Defendant did not provide Plaintiff, or Class Members, with such notice, as required by the San Diego Municipal Code. Thus, Defendant was completely barred from charging its San Diego tenants these utility fees. Despite this prohibition, Defendant nonetheless continued to charge its San Diego tenants for City provided utility services.

---

[5] San Diego Mun. Code § 98.1203.
[6] San Diego Mun. Code § 98.1204.
[7] *Id.*
[8] *See* San Diego Mun. Code § 98.1204(b)

**D. Security Deposits**

65. A landlord cannot make deductions to the security deposit for anything it likes. California law is very clear as to what deductions a landlord may make to the security deposit, and the timing by which a landlord must comply.

66. The California Supreme Court said it best,

> From the plain language of the statute we conclude that a landlord (1) must return a tenant's security deposit within the specified period after the termination of the tenancy, (2) may retain all or part of the security deposit as compensation for *unpaid rent, repairs, and cleaning*, and (3) must provide a written accounting of any amounts retained within the specified period. If, within the specified period, the landlord has not provided the tenant with a written accounting of the portion of the security deposit he plans to retain, the right to retain all or part of the security deposit under section 1950.5, subdivision (f), has not been perfected, and he must return the entire deposit to the tenant.
>
> *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744-745.

67. California Civil Code § 1950.5 is very clear with the obligations a landlord has in handling a tenant's security deposit.

68. The Civil Code provides that a security deposit may only be used for: (i) compensation to the landlord for a tenants default in rent; (ii) repairing damage to the premises that was caused by the tenant and is exclusive of ordinary wear and tear; (iii) cleaning the unit to return it to the level of cleanliness at the start of the tenancy; and, (iv) the cost of repairing the landlord's personal property, but only if the rental agreement authorizes use for such.[9]

69. The Civil Code prohibits, in part, the landlord from:

> assert[ing] a claim against the tenant or the security for damages to the premises or any defective conditions that preexisted the tenancy, for ordinary wear and tear or the effects thereof, whether the wear and tear preexisted the tenancy or occurred during the tenancy, or

[9] California Civil Code § 1950.5(b)(1-4)

> for the cumulative effects of ordinary wear and tear occurring during any one or more tenancies.[10]

70. The Civil Code further prescribes when a tenancy is ending unrelated to a lawful eviction, the landlord shall notify the tenant in writing of the right to request an initial inspection of the premises.[11] The purpose of such inspection is to give the tenant an opportunity to fix identified issues—consistent with the rights and obligations of the parties under the rental agreement—so that the tenant can avoid deductions from the security.[12]

71. After such initial inspection, the landlord is required to give the tenant an itemized statement (in person or left in the premises) that specifies the repairs or cleanings allowed under the law, including the text of the law.[13]

72. The tenant shall then have the opportunity to fix such issues reported, so long as it is their obligation to do so, to avoid deductions to their security deposit.[14]

73. The landlord is prohibited from making deductions to the security deposit for repairs or cleaning that were not identified in the initial inspection, unless the identified repairs or cleaning was not done by the tenant, the repairs or cleaning were done for damages that occurred between the inspection and the move-out, or the tenants possessions prevented the landlord from finding the need for cleaning or repair.[15] To reiterate, if repairs or cleaning were not identified in the initial inspection, a landlord may not deduct costs for unidentified repairs or cleaning from the security deposit.

74. After the tenant moves out, the landlord has twenty-one (21) days to personally deliver or send by first-class mail, postage prepaid, (i) a copy of an itemized statement of deductions to the security deposit with the lawful bases for such deductions, and (ii) any remaining portion of the security to the tenant.[16] Importantly,

---

[10] California Civil Code § 1950.5(e)(2)(A)
[11] California Civil Code § 1950.5(f)(1)
[12] *Id.*
[13] California Civil Code § 1950.5(f)(2)
[14] California Civil Code § 1950.5(f)(3)
[15] California Civil Code § 1950.5(f)(4)-(6)
[16] California Civil Code § 1950.5(h)(1)

the landlord is required to include copies of documents (like receipts) showing charges incurred and deducted by the landlord to repair or clean the premises with the itemized statement.[17]

75. Specifically, a landlord is required to provide details of who did the work. If the landlord or the landlord's employee did the work, the itemized statement shall reasonably described the work performed and must include the time spent and the reasonable hourly rate charged.[18] If someone other than the landlord or the landlord's employee did the work, the landlord shall provide the tenant a copy of the bill, invoice, or receipt supplied by the person or entity performing the work, and the landlord must provide the tenant with the name, address, and telephone number of the person or entity, in the itemized statement if the bill, invoice, or receipt does not include that information.[19]

76. If the landlord fails to comply with the law in bad faith, the landlord is not entitled to collect any of the security deposit.[20]

77. Further, if possession is returned to a landlord after April 1, 2025, the landlord is required to take photos of the unit *before* and *after* any repairs or cleaning is done to the unit.[21] If a deduction is made from the security deposit for repairs or cleaning, such photos are to be delivered to the tenant along with a written explanation of the cost for the allowable work done to the premises.[22]

78. For Plaintiff's move out, Defendant did not conduct an initial inspection and then made many improper deductions from the security deposit. First, in lieu of conducting an initial inspection, Defendant represented that Plaintiff was eligible for an "express checkout," meaning that if Plaintiff paid an express checkout fee (a cleaning fee), then Defendant would not make deductions from the security deposit for ordinary wear and tear. Defendant never conducted the initial inspection and did not

---

[17] *See* California Civil Code § 1950.5(h)(2)
[18] California Civil Code § 1950.5(h)(2)(A)
[19] California Civil Code § 1950.5(h)(2)(B)
[20] California Civil Code § 1950.5(h)(7)
[21] California Civil Code § 1950.5(g)(2) (emphasis added)
[22] California Civil Code § 1950.5(h)(2)(D)

provide any documentation for the cleaning fee with the itemized statement. Second, the deductions done to the security deposit were, with exception of the non-documented cleaning fee, for fees that are not (i) compensation to the landlord for a default in rent; (ii) repairing damage to the premises that was caused by Plaintiff and is exclusive of ordinary wear and tear; (iii) cleaning the unit to return it to the level of cleanliness at the start of the tenancy; or, (iv) the cost of repairing the landlord's personal property. The vast majority of the deductions were for the Contested Fees and the Transfer Fees. Third, the supporting documentation attached to the itemized statement did not adequately describe the charges because it merely restated the charges. Finally, photographs were not timely provided by an allowable means, and the photos that were provided, approximately one year later, presumably depicted the condition before cleaning or repairs were done and were completely devoid of any written explanation of the cost of the allowable repairs or cleaning.

79. Defendant gains unlawful revenue through nonjudicial, summary deduct-and-retain procedures, where it already possesses and controls security deposits, then makes unlawful deductions from them, rather than pursuing lawful means. Defendant steals from and fraudulently bills tenants for bogus charges and hides amounts it actually paid, if any. Defendant's representations are false and fraudulent misrepresentations of not only the condition of the units, but the tenants' legal obligations to pay Defendant such fees.

80. Defendant has not provided documentation (i.e., receipts from service providers for work alleged to have been done to Plaintiff's unit) that complies with Cal. Civ. Code § 1950.5(h)(2) to Plaintiff in any form.

**E. Habitability**

81. A landlord is required to keep and maintain a property in a habitable condition under California law.[23] This is known as the Implied Warranty of Habitability.

---

[23] Cal. Civ. Code § 1941 *et seq.*; *see also Green v. Superior Court* (1974) 10 Cal.3d 616, 619.

82. The Implied Warranty of Habitability imposes obligations upon the landlord, which includes keeping the premises free of pests like insects and vermin.[24]

83. Defendant charges the Contested Fees, which are recurring, monthly fees passed on to its tenants; specifically, the Habitability Fees. These fees are charges for services that landlord is required to provide and pay for on its own under the Implied Warranty of Habitability. Such fees are calculated, according to the lease, by different formulas. The Pest Control fee is calculated as a flat-rate payment of $2.00 per month. The Trash Valet fee is calculated as a flat-rate payment of $25.00 per month. The Water Heating fee is calculated as an allocation based on a combination of square footage of the dwelling unit and the number of persons residing in the dwelling unit. None of these fees, especially the Water Heating fee, are based on actual usage.

84. Such charges are passed on to tenants via Defendant's online tenant portal, where monthly charges are posted and tenants are encouraged to pay their rent and other bills.

85. While such fees may be considered nominal to each individual unit, such fees add up across Defendant's entire California property management portfolio. Defendant effectively passes-on thousands of dollars to its tenants, like Plaintiff, each month by unlawfully delegating its legal obligations to its tenants.

86. For example, Plaintiff pays an estimated $55.30 ($2 for Pest Control + $25 for Trash Valet + $28.30 for Water Heating) each month for his rental unit. Assuming there are 1,200 impacted units in California, Defendant is charging $66,360 of illegal fees each month ($55.30 x 1,200 units) just for the Habitability Fees. The total for all Contested Fees is much more.

### F. Additional Fees Are Hidden from Advertised Prices

87. Deciding which apartment complex to select is one of the most important decisions a tenant makes. In order to do so, California has attempted to level the playing field and requires landlords to provide accurate information in advertising, so

[24] Cal. Civ. Code § 1941.1(a); Health and Safety Code § 17920.3(a)(12).

that tenants can make informed decisions. There is significant overlap between landlord-tenant laws and consumer protection laws in California.[25] The laws relating to advertising for apartments afford consumers protections from false advertising and deceptive marketing practices, such as tacking on mandatory fees after the initial price is advertised (commonly referred to as "drip" pricing).[26]

88. In California, an advertised price must include all mandatory fees that a consumer is expected to pay.[27]

89. Defendant advertises prices for available units in California, but it adds additional fees that are only disclosed once a tenant goes to sign a lease.

90. Further, Defendant delivers tenants a payment schedule at the initiation of the lease, but the payment schedule does not include all of the fees a tenant is expected to pay.

91. Habitability Fees. Tenants are required to pay a monthly pest control fee, a hot and cold-water fee[28], and a Trash Valet fee (after paying a fee for trash service). These fees are charged at a flat rate and do not bear a relationship to services actually provided. Such fees are unsupported by documentation of costs expended to administer such services.

92. Administrative Fees. Tenants are required to pay monthly administrative fees for some utility services. The fees do not have a fixed price and are variable. Such fees are unsupported by documentation of costs expended to administer such services.

93. Additional Monthly Fees. Tenants are required to pay monthly flat-rate fees for other ambiguous charges, such as the "Green Living" fee or a package fee. Such fees have a fixed price in the lease and are unsupported by documentation of costs expended to administer such services.

---

[25] *See, e.g.,* California Department of Justice, Office of the Attorney General, *CONSUMER ALERT Know Your Rights: A Guide for Tenants* (rev. 2022), https://oag.ca.gov/system/files/media/Know-Your-Rights-Tenants-English.pdf (last visited Oct. 22, 2025)

[26] *See, e.g.,* California Department of Justice, Office of the Attorney General, *SB478 – Hidden* Fees (2024) https://oag.ca.gov/hiddenfees (last visited Oct. 22, 2025).

[27] *See* California Civil Code § 1770(a)(9, 20 29); *see also* California Business and Professions Code § 17200 *et seq.*

[28] The First Lease does not specify charges for cold water, but the utility bill attached to the Final Account Statement does specify this charge, in addition to the charges for "hot water" and "water base."

94. Additional One-Time Fees. Tenants are required to pay further additional fees, like lockout fees, application fees, and transfer fees, which are not sufficiently specified in the lease. The fees are unsupported by documentation of costs expended to administer such services, whatever these "services" may be.

95. While the fees may be considered nominal to each individual unit, such fees add up across Defendant's entire California property portfolio. Defendant passes-on thousands of dollars to its tenants each month without disclosing such fees in its advertising.

96. Passing these fees onto tenants is an unlawful or fraudulent business practice because landlord has a duty to maintain habitability standards. The fees are not mentioned in advertising thereby deceiving tenants into believing that the price for a unit is lower than what Defendant ultimately charges them.

G. **Defendant's Acts of Theft and Fraud**

97. Unfortunately for Defendant's current and former tenants, Defendant's policies and procedures amount to illegal activity, resulting in repeated acts of larceny.

98. Statutory Larceny. To commit statutory larceny in California, one must: (i) take the personal property, (ii) of another, (iii) without consent, and (iv) with the intent to permanently deprive the owner of that property.[29] Liability is imposed upon all the actors who commit those acts outlined above, and those who knowingly aids and abets such actors, or those who knowingly receive such stolen property.[30] Defendant has developed common policies, practices, procedures or schemes designed to steal money from current and former tenants, without consent, to benefit itself, with the intention of permanently depriving the money from the current and former tenants.

99. Such money is stolen pursuant to false and fraudulent misrepresentations as outlined above, which are made knowingly and by design, pursuant to common policies, practices, procedures or schemes. Defendant uses such fraudulent

[29] Cal. Penal Code § 484

[30] Cal. Penal Code § 496

misrepresentations to retain security deposits entrusted to it and intentionally charge unlawful fees to tenants. Defendant is not ignorant of its illegal conduct because it already settled the Previous Class Action. Defendant knows that money is being stolen from its tenants, or otherwise knowingly aids and abets the theft of such property.

100. Defendant asserts such a purported lawful basis by threatening to send unpaid sums to third-party debt collectors and report to credit reporting agencies unless payment in full is made or a payment plan is formed. Such representations to current and former tenants regarding unlawful fees and move out costs are material, false, and done with the intention to defraud.

101. All such acts outlined in the preceding paragraphs were related and continuous.

**H. Plaintiff and Class Members Suffered Damages**

102. Defendant's policies, practices, procedures, and schemes have caused Plaintiff and Class Members to be damaged. Plaintiff and Class Members have suffered monetary damages in the form of losing entire security deposits, paying additional charges related to habitability that were not their legal responsibility to pay, and being charged hidden fees.

103. Further, the damages that Plaintiff and Class Members have suffered are ongoing and are imminent without equitable relief. Plaintiff and Class Members will suffer damages in the future because Defendant has a pattern or business practice that it follows and will continue to do so.

## CLASS ACTION ALLEGATIONS

104. Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

> SECURITY DEPOSIT CLASS
> All persons who were tenants of residential properties in California owned and/or managed by Defendant, whose tenancies ended within four (4) years prior to the filing of the original Complaint through the date of class certification, and from whom Defendant

deducted any amount from the security deposit. ("Security Deposit Class")

MONTHLY FEES CLASS
All persons who were tenants of residential properties in California owned and/or managed by Defendant during the period beginning four (4) years prior to the filing of the Complaint through the date of class certification, and who paid one or more Contested Fees imposed by Defendant. ("Monthly Fees Class").

SAN DIEGO FEES CLASS
All persons who were tenants of residential properties in San Diego California owned and/or managed by Defendant during the period beginning August 17, 2025, through the date of class certification, and who paid one or more San Diego Fees imposed by Defendant. ("San Diego Fees Class").

TRANSFER FEES CLASS
All persons who were tenants of residential properties in California owned and/or managed by Defendant during the period beginning four (4) years prior to the filing of the Complaint through the date of class certification, and who were charged and paid one or more Transfer Fees in connection with a unit transfer. ("Transfer Fees Class").

105. Excluded from the Classes are Defendant, their officers and directors, families and legal representatives, heirs, successors, or assigns and any entity in which either Defendant has a controlling interest, and any Judge assigned to this case and their immediate families.

106. Plaintiff reserves the right to amend or modify the definition of the Classes to provide greater specificity and/or further division into subclasses or limitation to particular issues.

107. **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The exact number or identification of class members is presently unknown, but it is believed that there are hundreds if not thousands of class members in the Class. The identities of the Class Members are ascertainable and can be determined based on records maintained by Defendant.

108. **Predominance of Common Questions:** There are multiple questions of law and fact common to the Class that will predominate over questions affecting only individual class members. The questions of fact and law that are common to the Class Members and predominate over questions that may affect individual Class Members, include, but are not limited to:

a) Whether Plaintiff's and the Class Members were charged fees alleged above;
b) Whether such fees were lawfully passed on to Plaintiff and Class Members;
c) Whether Defendant had a policy, practice, or procedure to charge Plaintiff and the Class Members illegal fees;
d) Whether Defendant repeatedly violated California Civil Code § 1950.5 in bad faith;
e) Whether Defendant had a policy, practice, or procedure to charge Plaintiff and the Class Members to retain the entirety of Plaintiff's and Class Members' security deposits;
f) Whether Defendant had a policy, practice, or procedure to charge Plaintiff and the Class Members sums in excess of the charges allowable under California Civil Code § 1950.5;
g) Whether Defendant had a policy, practice, or procedure to collect the charges when they did not have a legal basis for doing so;
h) Whether such charges are considered "debts;"
i) Whether Defendant credited Plaintiff or Class Members for ordinary wear and tear;
j) Whether Defendant engaged in unfair or deceptive business practices;
k) Whether Defendant engaged in larceny;
l) Whether Defendant caused Plaintiff and Class Members damages;
m) Whether Plaintiff and Class Members are entitled to actual damages,

nominal and/or statutory damages, other monetary relief, and/or equitable relief;

n) Whether Defendant violated the San Diego ordinances governing utility fees;

o) Whether Plaintiff and San Diego Fees Class Members are entitled to injunctive relief, equitable relief, monetary damages, and punitive damages under San Diego, Cal. Mun. Code § 98.1207;

p) Whether Defendant violated the California Unfair Competition Law (Business & Professions Code § 17200, et seq.).

109. **Typicality:** Plaintiff's claims are typical of those of other Class Members because they all had their security deposits retained, additional renovation costs were passed on to them, and they were charged illegal fees under the lease, due to Defendant's virtually identical conduct.

110. **Adequacy:** Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the other members of the Class he seeks to represent. Plaintiff is represented by experienced and competent attorneys ("Class Counsel") who have litigated numerous class actions. Class Counsel intends to prosecute this action vigorously for the benefit of everyone in the Class. Plaintiff and Class Counsel can fairly and adequately protect the interests of all members of the Class.

111. **Superiority**: A class action is superior to other available methods for fairly and efficiently adjudicating this controversy because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. There is no foreseeable difficulty in managing this action as a class action and it provides the benefits of single adjudication, economies of scale, and comprehensive supervision by

a single court.

**<u>First Cause of Action</u>**

**Unlawful Retention of Residential Security Deposits**

**Cal. Civ. Code § 1950.5**

112. Defendant did not have a policy, practice, or procedure that complied with the initial inspection practices under California Civil Code § 1950.5(f)(1).

113. Defendant charged Plaintiff and Security Deposit Class Members unsubstantiated cleaning, repair, and painting fees and deducted those charges from the security deposit.

114. Defendant had a policy, practice, or procedure to charge tenants costs associated with returning a unit to a condition that was better than as delivered to the tenants, in violation of Cal. Civ. Code § 1950.5(e)(2).

115. This policy, practice, or procedure did not exclude ordinary wear and tear from the charges, or otherwise credit tenants for ordinary wear and tear, in violation of Cal. Civ. Code § 1950.5(b)(2).

116. Defendant did not have a policy, practice, or procedure to initially inspect a property so that a tenant could maximize the return of their security deposit.

117. Defendant did not have a policy, practice, or procedure to provide the itemized statement indicating the basis for, and the amount of, any security received and the disposition of the security within twenty-one (21) days of Plaintiff or Class Members' move-out by first class mail or in person delivery as required by California Civil Code § 1950.5(h)(1).

118. Defendant did not provide copies of documents showing charges incurred and deducted by Defendant to repair or clean the premises, along with the itemized statement, as required by California Civil Code § 1950.5(h)(2).

119. Defendant, as a result of these charges, practices, policies, or procedures, unlawfully retained some or all of Plaintiff's and Security Deposit Class Members' security deposits.

120. Defendant's misconduct described above was done in bad faith.

121. As a direct and proximate result of Defendant's conduct, Plaintiff and Security Deposit Class Members suffered damages.

122. Plaintiff and Security Deposit Class Members are entitled to actual damages and statutory damages of twice the amount of their security deposits.

## Second Cause of Action

### Breach of Written Contract

123. Valid written contracts exist between Plaintiff and Class Members, on one hand, and Defendant, on the other, in the form of residential leases.

124. The leases, and California law, required Defendant to provide a security deposit refund (less lawful deductions) and an itemized accounting of any deductions within twenty-one (21) days after surrender or abandonment of premises.

125. Defendant breached the leases by making unlawful deductions to security deposits and by failing to provide legally sufficient itemized accountings of all deductions.

126. Plaintiff's lease is not materially different from other Class Members's leases with Defendant.

127. Defendant breached the leases with Plaintiff and Class Members in the same manner.

128. As a direct and proximate result of the breaches, Plaintiff and Class members have suffered damages in an amount to be proven at trial.

129. The leases contain a prevailing party attorney's fee provision, which includes litigation costs.

130. Plaintiff and Class Members are entitled to prevailing party attorney's fees and costs.

## Third Cause of Action

### Breach of the Implied Covenant of Good Faith and Fair Dealing

131. Plaintiff and Class Members entered into written contracts, or leases, with

Defendant.

132. Plaintiff and Class Members did all, or substantially all of the significant things that the contracts required them to do, like paying deposits and rent.

133. All conditions required for Defendant's performance occurred.

134. Defendant avoided doing initial inspections and made unlawful deductions from Plaintiff and Class Members' security deposits. Defendant did not provide the required documentation along with the itemized statement, which deprived Plaintiff and Class Members of the benefits under the contract.

135. Defendant charged Plaintiff and Class Members unlawful fees that deprived Plaintiff and Class Members of the benefit of having habitable units maintained by Defendant.

136. By doing so, Defendant did not act fairly and in good faith.

137. Plaintiff and Class Members were harmed by Defendant's conduct.

## Fourth Cause of Action

## Consumer Legal Remedies Act

## Cal. Civ. Code § 1750 et seq.

138. Plaintiff sent Defendant a Consumer Legal Remedies Act ("CLRA") demand letter, which was sent by certified mail with return receipt requested as required by Cal. Civ. Code § 1750 et seq. The letter outlined Defendant's conduct in violation of the CLRA and demanded relief within thirty (30) days of receipt.

139. Allegations in Plaintiff's CLRA letter were for violations of Cal. Civ. Code §§ 1770(a).

140. Defendant, as alleged throughout this complaint, falsely advertised the costs associated with available rental units.

141. Defendant represented that the transactions with Plaintiff and Class Members conferred or involved rights that were not conferred or involved.

142. Defendant represented that a part, replacement, or repair service was needed or done upon termination of the tenancies to the units when such a part,

replacement, or repair service was not needed and / or not Plaintiff's or Class Members' responsibility to correct.

143. Defendant represented that its illegal conduct was lawful when it was not.

144. Defendant shifted illegal costs and fees to Plaintiff and Class Members through the insertion of unconscionable provisions in the lease agreement.

145. Defendant advertised that units were offered at a specific price, but later added additional costs and fees, increasing the actual price of the units.

146. In his CLRA letter, Plaintiff demanded relief for the proposed Classes, as permitted by Cal. Civ. Code § 1781(a).

147. Before the expiration date of the demand letter, Plaintiff is entitled to bring an action for injunctive relief, under Cal. Civ. Code § 1782(d).

148. Plaintiff and Class Members are entitled to injunctive relief in the form of an order enjoining Defendant from charging unlawful fees and an order enjoining Defendant from making unlawful deductions from security deposits and to provide required documentation for lawful deductions.

**<u>Fifth Cause of Action</u>**

**Unfair and Deceptive Business Practices**

**Cal. Bus. & Prof. Code § 17200 et seq.**

149. Pursuant to §17200 of the California Business and Professions Code, "any unlawful, unfair or fraudulent business act or practice" constitutes "unfair competition."

150. The violations of the California Civil Code and other wrongdoing alleged herein constitute unlawful, unfair and/or fraudulent business acts and practices, and therefore "unfair competition," for purposes of § 17200 of the California Business and Professions Code. Among other violations, Defendant's collections of the Contested Fees, the Transfer Fees, and amounts deducted from or otherwise charged against retained security deposits are unlawful, and all entitle Plaintiff and Class Members to restitution under the UCL.

151. The unfair and/or fraudulent business acts and practices that constitute unfair competition are ongoing, and Plaintiff and Class Members are at imminent and immediate risk of future harm. Legal damages, which redress only past injury, cannot remedy the continuing and prospective imposition of these fees and charges; only injunctive relief can. For this reason, among others, Plaintiff and Class Members lack an adequate remedy at law.

152. Restitution under the UCL further affords relief that the legal causes of action cannot. The UCL reaches monies that, while potentially not recoverable as contract damages or otherwise under another legal theory asserted herein, were nonetheless unfairly or unlawfully obtained, including the fees and charges imposed under purported contractual authority that the UCL renders unlawful or unfair.

153. Further, the UCL provides relief for Class Members whose other causes of action are barred by any shorter applicable statute of limitations. For those Class Members, no adequate legal remedy exists, and they will have no relief absent this cause of action.

154. Plaintiff and Class Members have suffered financial injuries in fact and have lost money and/or property as a result of such unfair competition.

155. The facts set forth above establish that Plaintiff and Class Members are entitled to judgment against Defendant, awarding restitution to Plaintiff and Class Members of all monies acquired by means of the described unfair competition, including all wrongfully charged fees and wrongfully withheld security deposits.

156. Plaintiff and Class Members are further entitled to declaratory and injunctive relief establishing the rights and obligations among the Parties and for an order mandating Defendant adhere to the requirements of law.

///

///

///

///

**<u>Sixth Cause of Action</u>**

**Rosenthal Fair Debt Collection Practices Act**

**Cal. Civ Code § 1788 et seq.**

157. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

158. In enacting the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788-1788.33 ("RFDCPA"), the California Legislature found that "[u]nfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers [that] [t]here is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other" and that it was necessary to ". . . prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1.

159. The RFDCPA defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). "Debt collection" means "any act or practice in connection with the collection of consumer debts." Cal. Civ. Code § 1788.2(b).

160. The RFDCPA defines "consumer debt" as "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f). A "consumer credit transaction" is "a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e). A "debtor" is "a natural person from whom a debt collector seeks to

collect a covered debt that is due and owing or alleged to be due and owing from that person." Cal. Civ. Code § 1788.2(h).

161. Plaintiff and Class Members completed an application, which included a background check and a credit check.

162. Further, Plaintiff and Class Members acquired services from Defendant. Specifically, Defendant rendered discrete services to Plaintiff and Class Members—including pest control, valet trash, cleaning, and other itemized fee services, in addition to charges associated with repairing or cleaning a unit after move out—and Plaintiff and Class members received the benefit of those services before payment was due. Defendant did not require payment at the time the services were rendered; instead, Defendant billed Plaintiff and Class Members for those services after the fact, posting the charges to Plaintiff's online tenant portal as a balance payable at a later date. Plaintiff and Class Members thereby acquired Defendant's services on credit, primarily for personal, family or household purposes.

163. The amounts Defendant charged for these services were, and were alleged by Defendant to be, due and owing from Plaintiff and Class Members. Defendant posted the charges to Plaintiff's portal as a then-due balance, and the charges became past due and remained subject to collection. Plaintiff and Class Members were therefore "debtors," and the amounts charged are "covered debts."

164. Defendant is a "debt collector" within the meaning of Cal. Civ. Code § 1788.2(c) because in the ordinary course of business it regularly collects consumer "debts," including but not limited to fees and move out costs.

165. The RFDCPA prohibits unfair and deceptive conduct. *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1084 (2019). Defendant violated the RFDCPA by (1) initiating contact with Plaintiff and Class Members to collect fees and charges Defendant knew or should have known had been procured through fraud, and that, even if valid, they would be subject to a vast array of potential defenses; and, (2) by accepting and retaining payments made on these invalid fees and charges.

166. The foregoing acts and omissions constitute multiple violations of the RFDCPA against Defendant and the violations were knowing and willful.

167. As a result of each and every violation of the RFDCPA, Plaintiff and each Class Member is entitled to actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages in the amount up to $1,000 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney fees and costs pursuant to Cal. Civ. Code § 1788.30(c).

**<u>Seventh Cause of Action</u>**

**Statutory Larceny**

**Cal. Pen. Code §§ 484 & 496**

168. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs as though fully set forth herein.

169. Cal. Pen. Code § 496 imposes liability upon:

> [e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained[.]

170. Cal. Pen. Code § 484, which defines "theft", states in pertinent part:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

171. Under California law, Plaintiff's and Class Members' security deposit constitutes property that can be the subject of theft.

172. Defendant acted in a manner constituting theft by fraudulently appropriating property which has been entrusted to them, with the specific intent to deprive Plaintiff and Class Members of their property.

173. Under California law, the amounts Plaintiff and Class Members paid in excess of their security deposits constitutes property that can be the subject of theft.

174. Defendant acted in a manner constituting theft by defrauding Plaintiff and Class Members of money by making a false or fraudulent representation or pretense, with the specific intent to deprive Plaintiff and Class Members of their property.

175. Under California law, the amounts Plaintiff and Class Members paid in fees constitutes property that can be the subject of theft.

176. Defendant acted in a manner constituting theft by defrauding Plaintiff and Class Members of money by making a false or fraudulent representation or pretense, with the specific intent to deprive Plaintiff and Class Members of their property.

177. Plaintiff and Class Members did not consent to any of Defendant's actions to take Plaintiff and Class Members money or property.

178. Pursuant to Cal. Pen. Code § 496(c), Plaintiff and Class Members are entitled to treble damages, as well as attorneys' fees and costs as a result of Defendant's violations of Cal. Pen. Code § 496(a).

**<u>Eight Cause of Action</u>**

**Unlawful Utility Fees**

**San Diego Mun. Code § 98.1201 et seq.**

179. Plaintiff and San Diego Fees Class Members are "tenants" within the meaning of San Diego, Cal., Mun. Code § 98.1202.

180. Defendant is a "landlord" within the meaning of San Diego, Cal., Mun. Code § 98.1202.

181. Defendant charged Plaintiff and San Diego Fees Class Members a "Utility fee" in connection with a "residential rental property" within the meaning of San Diego, Cal., Mun. Code § 98.1202.

182. Defendants did not provide written notice to Plaintiff and San Diego Fees Class Members, as required by San Diego, Cal., Mun. Code § 98.1204.

183. As a direct and proximate result of Defendant's actions and omissions, Plaintiff and San Diego Fees Class Members have been harmed.

184. Plaintiff and San Diego Fees Class Members are entitled to injunctive relief, equitable relief, and monetary damages, including punitive damages, as permitted by San Diego, Cal., Mun. Code § 98.1207.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment as follows:

1. Certify the Classes , pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23 (b)(3), and appoint Plaintiff as representative of the Classes and his attorneys as Class Counsel;
2. Actual damages and statutory damages pursuant to Cal. Civ. Code § 1950.5(m)
3. Actual damages, statutory damages, and reasonable attorney's fees and costs, pursuant to Cal. Civ. Code § 1788.30;
4. Treble damages, as well as attorneys' fees and costs, pursuant to Cal. Pen. Code § 496(c);
5. Restitution for all members of the Classes under the UCL;
6. Injunctive and other equitable relief as is necessary to protect the interests of the Classes under the CLRA;
7. Injunctive and other equitable relief as is necessary to protect the interests of members of the Classes under Cal. Civ. Code § 1788.30;
8. Injunctive and other equitable relief is necessary to protect the interests of the Classes under the San Diego Municipal Code, § 98.1207(b);
9. Monetary damages and punitive damages, as permitted by San Diego Municipal Code, § 98.1207 (b);
10. An award of compensatory, statutory, and nominal damages in an amount to

be determined;

11. An award for equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;
12. Such other relief as the court deems fair and reasonable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims so triable.

DATED: June 5, 2026

**SWIGART LAW GROUP, APC**

By: *s/ Joshua B. Swigart*
Joshua B. Swigart
Josh@SwigartLawGroup.com
*Attorneys for Plaintiff*

DATED: June 5, 2026

**SHAY LEGAL, APC**

By: *s/ Harrison J. Lynch*
Daniel G. Shay
Dan@ShayLegal.com
Harrison J. Lynch
Harrison@ShayLegal.com
*Attorneys for Plaintiff*